UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jolene Marie Griggs,

    Plaintiff,

    v.                                    Civil Action No. 2:12-CV-4

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 7, 12)

    Plaintiff Jolene Marie Griggs brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits.  Pending before the Court are Griggs's Motion for Order Reversing the Commissioner's Decision (Doc. 7), and the Commissioner's Unconsented Motion for Voluntary Remand (Doc. 12).  For the reasons stated below, the Court GRANTS the Commissioner's motion, and DENIES Griggs's motion, to the extent that it seeks reversal "for the payment of benefits."  (Doc. 7-1 at 14.)

## Background

    Griggs was twenty-seven years old on her alleged disability onset date of November 27, 2009.  In May 2008, she attained a bachelor's degree in hospitality and tourism management.  Her job history consists of working as a front desk clerk, a cashier, a registrar assistant, and a post office clerk.  She has also worked as a nanny for her

sister's children, in exchange for free board. (AR 468, 506.) Her parents are deceased, and during the relevant period, she lived with her sister and her sister's two children and then with her grandparents. (AR 468, 509-10.)

Starting in approximately 2008, Griggs experienced symptoms of multiple sclerosis (MS)[1], including difficulty walking in a straight line, intermittent vertigo, numbness in her hands, bouts of double vision, and concentration problems. (AR 40, 43-44, 325, 358, 506.) In October 2009, she was diagnosed with a remitting/relapsing type of MS. (AR 360, 369.) By November 2010, her symptoms included difficulty walking, leg pain, poor bladder control, and extreme fatigue. (AR 233, 389, 391, 546.) She reported in a Function Report that her only daily activities were lying in bed, using the bathroom, and going to doctors' appointments. (AR 241.) At the administrative hearing, Griggs testified that she suffers from severe pain and fatigue, forcing her to stay in bed all day on many days. (AR 34-35, 55.) The record demonstrates that she also suffers from restless leg syndrome, carpel tunnel syndrome, obesity, depression, anxiety, and panic attacks.

In March 2010, Griggs filed an application for disability insurance benefits. Therein, she alleges that, starting on November 27, 2009, she has been unable to work due to MS, fibromyalgia, anxiety, carpel tunnel syndrome, depression, and restless leg syndrome. (AR 219.) She also alleges that she suffers from sleep problems; extreme fatigue; difficulty concentrating, focusing, and thinking; numbness in her hands, arms,

---

[1] Multiple sclerosis (MS) is a "disorder of the central nervous system, causing patches of sclerosis (plaques) in the brain and spinal cord." STEDMAN'S MEDICAL DICTIONARY 1733 (28th ed. 2006). Typical symptoms include "visual loss, . . . weakness, paresthesias, bladder abnormalities, and mood alterations." *Id.*

2

legs, and feet; and vision problems.  (AR 228.)  Griggs's application was denied initially and upon reconsideration, and she timely requested an administrative hearing.

A hearing was conducted on July 15, 2011 by Administrative Law Judge ("ALJ") Thomas Merrill.  (AR 28-76.)  Griggs appeared and testified, and was represented by an attorney.  A vocational expert ("VE") also testified at the hearing.  On July 26, 2011, the ALJ issued a decision finding that Griggs had not been under a disability, as defined in the Social Security Act, from her alleged onset date through the date of the decision.  (AR 19-27.)  Several months later, the Appeals Council denied Griggs's request to review the ALJ's decision, making it the final decision of the Commissioner.  (AR 1-3.)  Having exhausted her administrative remedies, Griggs filed the Complaint in this action on January 10, 2012.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if the impairment meets or equals a listed

3

impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that Griggs had not engaged in substantial gainful activity since her alleged onset date of November 27, 2009.  (AR 21.)  At step two, the ALJ found that Griggs had the severe impairments of MS and obesity.  (*Id.*)  Conversely, the ALJ found that Griggs's restless leg syndrome, fibromyalgia, and mental illness were non-severe.  (AR 22-24.)  At step three, the ALJ found that none of Griggs's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 24.)  Next, the ALJ determined that Griggs

had the RFC to perform the full range of light work, as defined in 20 C.F.R. § 404.1567(b).  (AR 24-26.)  Given this RFC, and based on testimony from the VE, the ALJ found that Griggs was capable of performing her past relevant work as a room service clerk.  (AR 26.)  The ALJ concluded that Griggs had not been under a disability from the alleged onset date of November 27, 2009 through the date of the decision.  (AR 26-27.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial

evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

As noted above, the Commissioner has filed a motion requesting that the Court enter a judgment remanding this matter for further administrative proceedings. (Doc. 12.) Therein, the Commissioner states that there are gaps in the administrative record and the ALJ applied improper legal standards, resulting in a decision that is unsupported by substantial evidence. (Doc. 12-1 at 2-3.) Griggs agrees that the ALJ's decision is unsupported by substantial evidence, as she initially argued in her motion to reverse the Commissioner's decision (Docs. 7, 13), but opposes remand for further administrative proceedings on the grounds that a "more complete administrative record" is not required (Doc. 13 at 2). Griggs seeks reversal and remand for calculation and payment of benefits, as opposed to remand for a new administrative decision. (*Id.*)

Under sentence four of 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the decision of the Commissioner, "with or without remanding

the cause for a rehearing." Generally, it is appropriate to reverse solely for calculation and payment of benefits when the record provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). In *Rosa v. Callahan*, the Second Circuit held that courts should remand for development of the evidence (as opposed to merely for calculation and payment of benefits), "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." 168 F.3d 72, 82-83 (2d Cir. 1999) (quotation omitted). Griggs correctly points out that the Commissioner "does not state how a more complete administrative record might possibly support [the] Commissioner's decision." (Doc. 13 at 2.) In fact, the Commissioner fails to state with any specificity what gaps exist in the record. Nonetheless, the Court finds that a more complete medical record–containing updated opinions from Griggs's treating and examining providers– could assist the ALJ, although the ALJ may still properly conclude that Griggs is not disabled. *See Mott v. Astrue*, No. 5:10-cv-165, 2011 WL 4748345, at *6 (D. Vt. Oct. 6, 2011) (remanding for further development of the evidence because, "after considering a more complete medical record and making additional findings, an ALJ may [still] conclude Plaintiff is not disabled").

    Moreover, a need for a more complete record is not the only basis for remanding to the Commissioner for further administrative proceedings. As stated above, in *Rosa v. Callahan*, the Second Circuit wrote: "Where there are gaps in the administrative record *or the ALJ has applied an improper legal standard*, we have . . . remanded to the [Commissioner] for further development of the evidence." 168 F.3d at 82-83 (emphasis

7

added) (quotation omitted); *see also Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999) (holding "a remand for further proceedings is the appropriate remedy when an erroneous step four determination has precluded any analysis under step five"); *Marcus v. Califano*, 615 F.2d 23, 28-29 (2d Cir. 1979) (remanded for reconsideration under standard that subjective evidence of disabling pain, if credited, may support a finding of disability). Here, the parties agree that the ALJ applied improper legal standards, and the Court similarly finds.

The ALJ's most significant application of an improper legal standard was in his analysis of the medical opinions, particularly the opinion of state agency consulting psychologist Dr. Ellen Atkins. In a November 2010 "Psychiatric Review Technique" form, Dr. Atkins recorded that Griggs had "Panic Disorder with Agoraphobia" (AR 521); and opined that Griggs had "Moderate" difficulties in maintaining concentration, persistence, or pace; and had experienced "One or Two" episodes of decompensation, each of extended duration (AR 526). In a November 2010 "Mental Residual Functional Capacity Assessment" form, Dr. Atkins opined that Griggs was "Moderately Limited" in her: (a) "ability to maintain attention and concentrate for extended periods"; (b) "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and (c) "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (AR 512-13.) Dr. Atkins also stated in the Mental RFC form that Griggs experienced "episodic exacerbations in anxiety and depression [which could] disrupt [her] cognitive efficiency,"

and could "sustain [concentration, persistence, and pace] for [only] 2 hour periods over [a] typical workday/week."  (AR 514.)

The ALJ did not discuss these opinions of Dr. Atkins, even though he stated that he "afford[ed] significant weight" to Dr. Atkins's opinions regarding Griggs's non-exertional limitations (AR 26), and explicitly relied on Dr. Atkins's other opinions that Griggs was no more than mildly impaired regarding performing activities of daily living and maintaining social functioning (AR 23; *see, e.g.,* AR 526).  Particularly notable, the ALJ did not mention Dr. Atkins's opinions in the context of his determination that Griggs had "no more than *mild* limitation of function with regard to maintaining concentration, persistence[,] and pace" (AR 23 (emphasis added)), despite this finding being in direct conflict with Dr. Atkins's opinion that Griggs had "*Moderate*" difficulties in maintaining concentration, persistence, or pace (AR 526 (emphasis added)).  Nor did the ALJ mention Dr. Atkins's opinion that Griggs had experienced "*One or Two*" episodes of decompensation that were of extended duration (*id.* (emphasis added)), in the context of his contrary finding that Griggs had experienced "***no episodes*** of decompensation" of extended duration (AR 23 (italics added)).  Given these opinions of Dr. Atkins, and the ALJ's decision to afford significant weight to Dr. Atkins's opinions, he should have determined at step two of the sequential evaluation process that Griggs had a severe mental impairment.  The ALJ then should have considered the effect of this mental impairment on Griggs's RFC.

The ALJ also failed to explain his decision to reject the findings of examining psychologist, Dennis Reichardt, Ph.D., who diagnosed Griggs with Major Depressive

9

Disorder and Panic Disorder with Agoraphobia and opined that "[Griggs's] combined issues may suggest that her prognosis for employment would be poor."  (AR 411.)  Although the ALJ discussed other portions of Dr. Reichardt's evaluations, including for example the Doctor's relatively uninformative notations that Griggs "exhibited nervous energy, but . . . was pleasant with normal speech and animated mood" (AR 22; *see also* AR 23) and "was able to drive herself to the evaluation" (AR 24), he failed to explain his decision to disregard Dr. Reichardt's diagnoses and conclusion regarding Griggs's ability to work.

Furthermore, the ALJ's analysis of the opinions and medical records of treating neurologist Dr. Angela Applebee was flawed.  Dr. Applebee opined in a December 2010 letter that Griggs "carries a diagnosis of relapsing remitting [MS] [and] as a result . . . , she experiences significant pain and fatigue [which] severely limit her activity."  (AR 539.)  Likewise, in a June 2011 Questionnaire, after stating that Griggs's "pain and stiffness in leg limit [her] gait" and that her "fatigue limits [her] endurance" (AR 616), Dr. Applebee opined that Griggs "continue[d] to be bothered by significant pain and fatigue" (AR 617).  Finally, in a "Medical Assessment of Ability to Do Work-Related Activities (Physical)," Dr. Applebee opined that Griggs would be expected to miss more than two work days each month due to her impairments.  (AR 620.)  The ALJ afforded "only limited weight" to Dr. Applebee's opinions, summarily concluding that they were "inconsistent with [the Doctor's] own clinical records and observations."  (AR 26.)  The record does not support this conclusion.

In defense of the determination that Dr. Applebee's opinions were inconsistent with her own clinical records, the ALJ referred to Dr. Applebee's statement in a May 2011 progress note that Griggs's symptoms "did not interfere with activities of daily living." (AR 26; *see* AR 552.) But even a cursory review of the May 2011 progress note reveals that, in making this statement, Dr. Applebee was referring exclusively to symptoms stemming from Griggs's restless leg syndrome and not to those related to Griggs's MS or mental health problems.[2] Moreover, Dr. Applebee was not giving her *own* opinion on Griggs's ability to engage in activities of daily living, but rather was recording what Griggs had reported to her. (AR 552.) Furthermore, in the same progress note, Dr. Applebee made the following significant observations/opinions, which the ALJ failed to recognize in his decision: (1) Griggs's restless leg symptoms were not well-controlled during the day; (2) Griggs's fatigue had been a "significant problem" for her;[3] (3) Griggs was "suffering from insomnia with [only] 2 hours of sleep per night"; and (4) Griggs had "depression, anxiety[,] and excessive sweating." (AR 552-53.) The ALJ should have considered and discussed these findings before giving "only limited weight" to Dr. Applebee's opinions. (AR 26.)

---

[2] In the May 2011 progress note, Dr. Applebee recorded:

> [Griggs] states that her restless leg syndrome is better on the Mirapex only when taken at night. If she takes it in the morning, she notes a significant worsening of her restless legs. Her symptoms are not well controlled during the day, but she says they do not interfere with her activities of daily living.

(AR 552.)

[3] As argued by Griggs (Doc. 7-1 at 5) and conceded by the Commissioner (Doc. 16 at 17), the ALJ also erred in his consideration of the impact of Griggs's fatigue on her ability to work. This error affected not only the ALJ's analysis of Dr. Applebee's opinion but also the ALJ's RFC determination. On remand, the ALJ should consider this issue, keeping in mind that fatigue is a significant symptom of MS and exists even where the patient is not actively experiencing a relapse.

The ALJ's failure to properly consider the opinions of consulting physicians Drs. Atkins and Reichardt and treating physician Dr. Applebee impinged on the ALJ's decision at every step of the sequential analysis, beginning at step two.  Had the ALJ properly considered these opinions, it is likely he would have found that Griggs had a severe mental impairment (as conceded by the Commissioner) (Doc. 16 at 19), which finding would have affected every subsequent step in the analysis.  Moreover, the ALJ's failure to properly analyze these opinions resulted in the determination that Griggs had the RFC to perform the full range of light work, which in turn resulted in the VE's opinion that Griggs could perform her past work as a room service clerk.[4]  Remand is necessary so that the ALJ may begin the sequential analysis anew, this time properly evaluating the medical opinions.  It is not the job of the court to perform this analysis *de novo*.  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the [Social Security Act] regulations.") (citation omitted).

---

[4] In his Reply, the Commissioner references the VE's testimony at the administrative hearing that, although none of Griggs's past work could be performed if Dr. Applebee's opinions were accepted, other jobs existed in significant numbers in the national economy that Griggs could perform. (Doc. 16 at 16 (citing AR 71-73).)  But the ALJ did not adopt (or even discuss) this VE testimony, instead stopping the sequential analysis at step four, after determining that Griggs was capable of performing her past relevant work as a room service clerk. (AR 26.)  On remand, if the analysis proceeds past the third step, the ALJ should consider the VE's testimony about Griggs's ability to perform other jobs existing in significant numbers in the national economy as part of his step-five analysis.

**Conclusion**

For these reasons, the Court GRANTS the Commissioner's motion (Doc. 12), and DENIES Griggs's motion (Doc. 7), to the extent that it seeks a reversal and remand solely for calculation and payment of benefits.  The Court cannot conclude that the record in this case is "sufficiently complete or persuasive with respect to disability as to make a remand unnecessary," *Williams*, 204 F.3d at 50, or that "application of the correct legal standard could lead to only one conclusion," *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).  Thus, the matter is REMANDED to the Commissioner for further administrative proceedings.  *See Rosa*, 168 F.3d at 83 ("Because further findings would so plainly help to assure the proper disposition of [the claimant's] claim, we believe that remand is particularly appropriate in this case.") (quotations omitted).  On remand, the ALJ is instructed to:

(1) update Griggs's medical records;

(2) obtain updated physical and mental medical source statements and opinions from all treating and examining physicians;

(3) *reevaluate the medical opinions, including in particular the opinions of state agency psychologists Drs. Atkins and Reichardt and treating neurologist Dr. Applebee*;

(4) reassess Griggs's RFC in light of the updated record and reconsideration of the medical opinions;

(5) conduct a new administrative hearing with expert testimony, if necessary;

(6) obtain VE testimony as needed to determine the impact of a revised RFC on Griggs's ability to perform work at the relevant exertional level, in response to a

hypothetical question reflecting the specific functional capacities and limitations established by the record as a whole; and

(7) issue a new decision based on the record, explaining the weight afforded to all relevant aspects of the applicable medical opinions, and providing rationale with specific references to the record in support of the assessed physical and mental RFC.

Dated at Burlington, in the District of Vermont, this 26th day of November, 2012.

                                           /s/ John M. Conroy
                                           John M. Conroy
                                           United States Magistrate Judge